**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.G.**

**No. 21-0774** (Raleigh County 20-JA-73)

**MEMORANDUM DECISION**

Petitioner Mother T.R., by counsel Matthew A. Victor, appeals the Circuit Court of Raleigh County's September 20, 2021, order terminating her parental rights to G.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Amber Hinkle, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without affording her a meaningful improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner failed to adequately supervise two older children, A.R. and M.R., who are not at issue on appeal. The DHHR also alleged that the home was filthy, there was inadequate food, and A.R. and M.R.'s hygienic and educational needs were not being met. The DHHR also alleged that, as a result of a contested custody matter in family court, a guardian ad litem investigated and learned that there was suspected drug activity in the home. Thereafter, petitioner waived her preliminary hearing, and the circuit court ordered her to submit to drug and alcohol screens. During a multidisciplinary team ("MDT") meeting in June of 2019, petitioner disclosed that she abused methamphetamine. The DHHR filed an amended child abuse and neglect petition in August of 2019 alleging that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

petitioner was arrested for obstructing an officer on July 10, 2019, and admitted to using methamphetamine around July 29, 2019.

In September of 2019, the circuit court held an adjudicatory hearing, during which petitioner stipulated to the allegations contained in the petitions.[2] The circuit court accepted the stipulations and adjudicated petitioner as an abusing parent to A.R. and M.R. The court granted petitioner a post-adjudicatory improvement period, the terms of which required her to submit to drug screens, attend parenting and adult life skills classes, attend inpatient drug rehabilitation, participate in supervised visitations, and obtain suitable housing and stable employment. However, petitioner failed to attend MDT meetings in October and December of 2019, and the MDT members learned that she had been noncompliant with drug screening. Petitioner also failed to appear at the review hearing held in December of 2019, and the circuit court found that she was not complying with the terms of her improvement period at the review hearing in March of 2020.

The DHHR filed a second amended petition in June of 2020 after petitioner tested positive for heroin upon admission to the hospital to give birth to G.G. and admitted to smoking heroin for several months during the pregnancy. In July of 2020, the circuit court held a final review of petitioner's improvement period and terminated it, finding that she had not complied with its terms and conditions. In October of 2020, petitioner's counsel withdrew from representation, and she was appointed new counsel who was permitted to continue the next two hearings in November and December of 2020, citing an inability to reach petitioner.

According to the DHHR's court summary in preparation for the dispositional hearing regarding A.R. and M.R., petitioner was arrested for possession of a controlled substance in February of 2021. In March of 2021, the court held an adjudicatory hearing regarding G.G. Petitioner failed to appear, but counsel represented her. The court adjudicated petitioner as an abusing parent to G.G. based upon her substance abuse while pregnant with the child.

In April of 2021, the circuit court held the dispositional hearing regarding the three children A.R., M.R., and G.G., during which the DHHR worker testified that a case plan was created for petitioner during an MDT meeting on December 3, 2019, but petitioner failed to appear for the meeting and sign the case plan. The worker described communications with petitioner as "sporadic" and that when petitioner was having trouble reporting to drug screens and parenting and adult life skills classes at the Raleigh County Day Report Center, the worker obtained a transportation provider, but petitioner "disappeared" immediately thereafter. The worker did not hear from petitioner again until she went into a drug rehabilitation program on July 9, 2020. However, petitioner voluntarily left the program on July 14, 2020. The worker explained that when she asked petitioner why she left the program, petitioner answered that she was not ready for help. According to the worker, despite the offer of transportation services, petitioner did not complete parenting and adult life skills and failed to appear for almost all drug screen appointments. When providers contacted petitioner to complete services, petitioner would make up excuses or say that she already had transportation. The worker noted that he had not spoken with petitioner since June

---

[2]Petitioner's counsel moved to continue the previously scheduled hearing in August of 2019, as petitioner failed to appear.

of 2020 until the day before the hearing when petitioner called him stating that she was now ready to attend drug rehabilitation. On cross-examination by the guardian, when asked what petitioner's explanation was for not participating in the case, the worker stated that petitioner answered that her addiction had taken a toll on her, that she was not in her right mind, and that she had been "dumb" about the "whole thing." In the worker's opinion, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

Next, an employee at the Raleigh County Day Report Center testified that although petitioner was ordered to drug screen twice a week since May of 2019, petitioner participated in a total of twelve drug screens, half of which were positive for methamphetamine. The employee counted 153 missed drug screens on petitioner's report and explained that this total did not include times between March and May of 2020, when the center was closed due to the COVID-19 pandemic.

Finally, petitioner testified that she was first unwilling to enter inpatient drug rehabilitation but was now ready to go. She stated that she was sober and would comply with all terms of an improvement period. Petitioner conceded that she had not drug screened since October of 2020 but stated that she did not know that she was required to complete parenting and adult life skills classes. On cross-examination by the guardian, petitioner disclosed that she had pending criminal charges for delivery of a controlled substance, conspiracy to commit a felony, and breaking and entering. In closing, the DHHR and the guardian requested that the circuit court terminate petitioner's parental rights based upon her continued drug use and complete failure to participate in the DHHR's services. Ultimately, the circuit court found that petitioner's participation in the proceedings had been inconsistent due to her active drug addiction and further found that she had not complied with her case plan. The court noted that A.R. and M.R. had been in the DHHR's custody for more than fifteen of the most recent twenty-two months and that it was in their best interest to terminate petitioner's parental rights. The court terminated petitioner's parental rights to A.R. and M.R. only, and granted a post-adjudicatory improvement period to petitioner regarding G.G. Petitioner appealed the April 28, 2021, dispositional order terminating her parental rights to A.R. and M.R., and this Court affirmed the termination in *In re A.R.*, No. 21-0392, 2022 WL 123242 (W. Va. Jan. 12, 2022)(memorandum decision).

On June 14, 2021, the court held a review hearing regarding petitioner's most recent improvement period, but petitioner failed to appear. Petitioner's counsel proffered that petitioner was hospitalized due to an all-terrain-vehicle ("ATV") accident. In August of 2021, the court held a review hearing, during which it ordered petitioner to provide documentation to prove that she was previously hospitalized during the prior June 14, 2021, hearing. The court also ordered the DHHR to offer services to petitioner and continued her improvement period.

The court held a final dispositional hearing in September of 2021. Petitioner testified that she had been unable to enroll into six different inpatient drug rehabilitation facilities. She stated that one location would not accept her medical insurance and other facilities were not taking new patients due to the COVID-19 pandemic. Petitioner moved for a post-dispositional improvement period, but never produced the court-ordered medical documentation to support her alleged excuse of having suffered an ATV accident and hospitalization. The DHHR presented evidence that petitioner was given lists of rehabilitation facilities to contact, as petitioner insisted on choosing

her own facility, and that petitioner met with the assigned case worker twice during this most recent improvement period. The court found that petitioner had a history throughout the proceedings of failing to stay in contact with her counsel and the DHHR and failing to attend hearings and MDT meetings The court noted that petitioner failed to provide proof of her hospitalization that allegedly caused her absence at the June 14, 2021, hearing, and that she had not submitted to a drug screen since October of 2020. Further, the court found that the DHHR had provided petitioner with the opportunity to choose her own drug rehabilitation program, but petitioner had failed to do so. Ultimately, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for G.G.'s welfare. The circuit court terminated petitioner's parental rights to G.G. by order entered on September 20, 2021.[3]

> The Court has previously established the following standard of review in cases such as this:
>
> > "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights to G.G. without affording her a meaningful improvement period. Specifically, petitioner contends that she sought out services "unaided by the DHHR save for the . . . twenty-minute effort of the case worker to mail" petitioner a list of inpatient drug rehabilitation facilities and give petitioner the state's "1-800 Help for West Virginia" phone number. Petitioner concedes that her untreated drug addiction was the "singularly dispositive" issue in the case but argues that the DHHR failed to aid her in getting into drug treatment. Petitioner avers that she sought out treatment at numerous drug facilities and, with more time, she could have successfully enrolled into a program. According to petitioner, the DHHR's "hands-off approach" made petitioner's improvement period meaningless.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future" and that termination is necessary for

---

[3]G.G.'s father voluntarily relinquished his parental rights. The permanency plan for G.G. is adoption by her foster family.

the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the record clearly establishes that petitioner failed to address what she concedes was the most important issue in the matter—her untreated drug addiction—despite more than two years of services and the termination of her parental rights to the two older children during the proceedings. Petitioner blames the DHHR for her own inability to fully participate in the terms of her most recent improvement period. We remind petitioner that the onus on completing the terms and conditions of an improvement period is placed squarely upon respondent parents in these proceedings. *See* W. Va. Code § 49-4-610(4)(A) ("When any improvement period is granted to a [parent] pursuant to this section, the [parent] shall be responsible for the initiation and completion of all terms of the improvement period."). The evidence below established that petitioner continued her same behaviors of failing to stay in contact with her counsel and her CPS workers and insisted upon finding a drug rehabilitation facility on her own after leaving a previous program and finding fault with others. Moreover, petitioner completely ceased submitting to drug screens, which was unrelated to her alleged excuse that the drug rehabilitation facilities lacked availability. Finally, petitioner failed to provide court-ordered documentation that she was, in fact, hospitalized and unable to attend the June 14, 2021, review hearing. Throughout the entirety of the proceedings, petitioner missed hearings, missed MDT meetings, and blamed others for her shortcomings. Ultimately, the court below, having presided over the proceedings since May of 2019, found petitioner's testimony that she was unable to obtain inpatient drug treatment incredible. This is a determination we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Accordingly, it is clear that petitioner failed to follow through with a reasonable family case plan designed to address the issues of abuse and neglect, and, as such, we find no error in the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future.

Finally, insomuch as petitioner argues that she was entitled to more time, this Court has previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Additionally, petitioner was not entitled to a less drastic dispositional alternative, as we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West

Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the evidence set forth above, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 20, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment